**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICHAEL LAYMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-484-FHS-KEW |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Michael Laymon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 9, 1968 and was 45 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a pipe fitter and welder. Claimant alleges an inability to work beginning June 15, 2011 due to limitations resulting from lumbar disc disease with

3

radiculopathy, obesity, GERD, left knee medial tenderness, angina pectoris, tennis elbow, depressive disorder, and generalized anxiety.

**Procedural History**

On December 8, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 3, 2013, Administrative Law Judge Bernard Porter ("ALJ") conducted an administrative hearing in McAlester, Oklahoma. On September 20, 2013, the ALJ entered an unfavorable decision. The Appeals Council denied review of the decision on October 22, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to make a proper credibility determination; (2) arriving at an improper RFC determination; (3) failing to give proper weight to the opinion of Claimant's treating physician; and (4) failing to fully develop the record.

**Credibility Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar disc disease with radiculopathy, obesity, gastroesophageal reflux disease ("GERD"), left knee medial tenderness, angina pectoris, tennis elbow, depressive disorder, and generalized anxiety. (Tr. 12-13). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, the ALJ determined Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight hour workday; push/pull as much as he can lift or carry; occasionally climb ramps and stairs but never climb any ladders or scaffolds; never crawl; should not work around heights or moving mechanical parts; should not work in any environment where there are temperature extremes; was limited to simple tasks and simple work related decisions; could occasionally interact with supervisors, co-workers, and the public; and would be off task five

5

percent of the workday and may miss up to one day of work each month due to episodic symptomatology. (Tr. 16).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of silver wrapper, bench assembler, and cleaner polisher, all of which the expert testified existed in sufficient numbers both regionally and nationally. (Tr. 24-25). As a result, the ALJ found Claimant was not disabled from June 15, 2011 through the date of the decision. (Tr. 25).

Claimant first asserts that the ALJ erred in his assessment of Claimant's credibility. Claimant challenges the sufficiency of the ALJ's analysis. Claimant reported that he engaged in activities of daily living such as preparing light meals, took care of dogs, doing laundry, driving, shopping, and showering without assistance. (Tr. 193). He also changes light fixtures and mows the lawn on a riding lawn mower. (Tr. 47-48).

The evaluations by Dr. Kenneth Wainner on March 26, 2012 as affirmed by Dr. Karl K. Boatmand on June 15, 2012 indicates physical restrictions which mirror those found by the ALJ. (Tr. 382, 410). The mental restrictions determined by the ALJ are similar to those found by Dr. Diane Brandmiller (Tr. 363) and Dr. Ron Cummings (Tr. 377). None of these experts support Claimant's

subjective statements of functional limitation.

The ALJ also relied upon the medical testing which showed normal straight leg raise tests as well as x-rays and MRIs which indicated degenerative changes not requiring the restrictions in function claimed by Claimant. (Tr. 261, 341, 294-315, 389-406, 418-453, 464-537). The ALJ also noted Claimant applied for unemployment benefits which requires Claimant to certify that he is willing and able to work, a requirement the ALJ found was inconsistent with a claim for disability. (Tr. 21).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the

7

individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ provided a thorough analysis of Claimant's credibility in light of the objective medical record. No error is found in the analysis.

### RFC Determination

Claimant references two restrictions which should have been included in the RFC. Claimant states that the five percent time off task set out in the RFC by the ALJ is "unrealistic" and should affect productivity. The ALJ properly relied upon the vocational

8

expert's testimony that such a limitation would not result in a reduction of the number of jobs available to Claimant. (Tr. 63).

Claimant also contends the ALJ did not properly account for the side effects of the various medications prescribed to Claimant. Claimant fails to direct this Court to any references in the record to side effects from which he has suffered during the course of his treatment.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between

an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

**Consideration of the Opinion of the Treating Physician**

Claimant contends the ALJ failed to properly weigh the opinion of his treating physician, Dr. George B. Howell. On December 30, 2011, Dr. Howell completed a physical medical source statement on Claimant. He found Claimant could sit for 15 minutes, stand for 30 minutes, and walk for 30 minutes at one time. He determined Claimant could sit for two hours, stand for two hours, and walk for two hours during an eight hour workday. Claimant also could not engage in repetitive movement with his feet, such as using foot controls. Dr. Howell determined Claimant could occasionally bend, squat, stoop and kneel but never crawl, climb, or crouch. (Tr. 289).

He also noted Claimant should never be exposed to unprotected heights or drive automotive equipment while occasionally being around moving machinery and being exposed to marked temperature changes. Claimant's pain level was designated as "severe". Dr. Howell estimated Claimant would need to take unscheduled breaks during an eight hour workshift, would need to lie down at

unpredictable times, whose pain would interfere with his attention and concentration and would affect his ability to tolerate work stress. Claimant would be absent from work for more than four days per month. Claimant would also need to elevate his feet periodically during the day, would need a sit/stand option, and would have to use a cane or other assistive device to stand or walk. Dr. Howell also stated Claimant experiences headaches caused by anxiety/tension, migraines, bright lights, strong odors, vigorous exercise, and weather changes. (Tr. 290-91).

The ALJ gave Dr. Howell's opinion "little weight" because it was inconsistent with his own examination records. (Tr. 23). Dr. Howell treated Claimant with pain medication. He noted Dr. Howell only found tenderness in the lumbar region to palpation. Id. The findings were also inconsistent with Claimant's recorded activities.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ might not have provided a point-by-point analysis under the Watkins factors, he provided an objective basis for finding that Dr. Howell's opinion was inconsistent with the level of his treatment and, therefore, entitled to reduced weight in light of the other medical opinion evidence.

### Duty to Develop the Record

In a curious final argument, Claimant contends the ALJ failed to develop the record on some unidentified additional physical impairment apparently not accounted for in the severe impairment analysis or the RFC. Without more information as to the exact nature of these additional medical conditions, the argument cannot be addressed. In a case where a claimant is represented by counsel, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." Cowan v. Astrue, 552 F.3d 1182, 1188 (10th Cir. 2008)(citations omitted).

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE